NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0384n.06

**FILED**
May 22, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, )
)
Plaintiff-Appellee, ) ON APPEAL FROM THE
) UNITED STATES DISTRICT
v. ) COURT FOR THE EASTERN
) DISTRICT OF TENNESSEE
JOHNNY CARL GROOMS, )
) OPINION
Defendant-Appellant. )
_____ )

**Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Following a five-day trial in May 2011, Johnny Carl Grooms was convicted on 16 counts relating to drug possession, drug trafficking, ginseng trafficking, and the illegal possession of firearms. He now appeals from those convictions, arguing that the district court erred in the following three ways:

First, Grooms contends that the district court erred in denying his motion to suppress the evidence obtained by law-enforcement officers in September 2009 during their search of Grooms's business, the Park Entrance Grocery in Cosby, Tennessee. He argues that the search warrant was defective because probable cause was lacking.

Grooms's second argument is that the district court erred in failing to suppress text messages that he had sent to his son Jonathan Grooms on the latter's cellular telephone.

Jonathan filed a motion to suppress the text messages retrieved by a law-enforcement officer during a search of Jonathan's phone following his arrest in September 2010.

Finally, Grooms contends that the district court erred in not excluding certain background evidence at trial. He argues that this "other acts" evidence was unfairly prejudicial.

For the reasons set forth below, we conclude that none of Grooms's arguments have merit. We therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Grooms operated the Park Entrance Grocery, a small store located near the Great Smoky Mountains National Park, for many years. Most of the activity inside the store, however, involved the sale of illegal drugs. Grooms sold cocaine and various prescription drugs at the store. He also trafficked in ginseng.

In 2008, the United States Fish and Wildlife Service began investigating ginseng harvesting that was occurring in the Park. Federal law prohibits such harvesting. In connection with the investigation, Special Agent Tom Chisdock visited Grooms at the Park Entrance Grocery in September 2008. Chisdock, who was working in an undercover capacity, wore a concealed recording device during this visit and during all subsequent visits. Following Chisdock's arrival at the store, Grooms and Chisdock discussed the harvesting of ginseng. Grooms acknowledged that he had recently given a man hydrocodone pills and $20 in exchange for ginseng harvested from the Park. He also told Chisdock that ginseng was drying at Grooms's house. Before Chisdock left the store, a woman walked in and handed Grooms some ginseng in exchange for a prescription pill.

Chisdock next visited the store in November 2008. During this visit, Grooms and Chisdock discussed the prices of cocaine, marijuana, and prescription painkillers. A man then

walked in and began talking about suboxone, which is a prescription drug used to treat heroin addiction. Grooms later removed several prescription pills from a bottle and showed them to Chisdock. The pills included oxycodone and roxicodone. Grooms told Chisdock that in the future they should refer to drugs using code words because Grooms believed that his telephone line was being monitored by law enforcement.

Chisdock returned to the Park Entrance Grocery in February 2009. A woman entered the store shortly after Chisdock and bought a roxicodone pill from Grooms. After the woman left the store, Grooms showed Chisdock a number of IOUs that Grooms had received from pill buyers. Grooms and Chisdock then discussed the price of cocaine. During this conversation, Chisdock could smell marijuana. Grooms explained that he had an open bag of marijuana in the basement of the store. He also offered Chisdock a bag of cocaine as a sample, which Chisdock accepted.

Chisdock's next undercover visit to the store occurred later that same month. At that time Grooms explained to Chisdock his method for obtaining prescription painkillers, which involved recruiting people who were willing to travel to Florida. Once they arrived in Florida, Grooms's recruits would feign back pain and undergo MRIs to obtain prescriptions for oxycodone and other frequently abused painkillers. When the recruits returned to Tennessee, Grooms purchased the prescription painkillers from them using Wal-Mart money orders. The conversation then turned to cocaine. Chisdock offered to buy some cocaine from Grooms, and Grooms sold him an ounce for $1,200.

Chisdock's final undercover visit to the store occurred in April 2009. After Chisdock arrived, a man entered the store and bought a prescription pill from Grooms on credit. Grooms then attempted to recruit Chisdock into helping Grooms obtain prescription painkillers from

Florida. Chisdock declined, but continued to stay in contact with Grooms after his last undercover visit. In particular, Grooms sold illegally harvested ginseng to Chisdock on three occasions in late 2009 and early 2010.

Based on the results of Chisdock's undercover investigation and various tips from confidential informants, Task Force Officer Kevin Kimbrough from the Drug Enforcement Agency applied for three search warrants in September 2009. A federal magistrate judge issued the warrants, which were executed that same month at the Park Entrance Grocery, at Grooms's residence, and at a storage lot owned by Grooms. Law-enforcement officers seized drugs, drug-transaction ledgers, drug paraphernalia, and firearms from the store and Grooms's residence. Nothing was seized from the storage lot.

A federal grand jury returned a second superseding indictment in January 2011 against Grooms, his wife Rosalba, his son Jonathan, his brother Terry, and six other codefendants. (D.E. 116) Grooms was charged with one count of conspiring to distribute oxycodone, two counts of traveling in interstate commerce to promote unlawful activity, one count of possessing oxycodone with the intent to distribute the drug, one count of conspiring to distribute cocaine, two counts of actually distributing cocaine, one count of possessing firearms in furtherance of drug-trafficking conspiracies, four counts of being a felon in possession of firearms, four counts of unlawfully transporting and selling ginseng plants in interstate commerce, and four counts of illegally trafficking in ginseng plants. (*Id.*) The felon-in-possession-of-a-firearm counts stemmed from Grooms's two prior felony drug convictions in Nebraska and Tennessee. (D.E. 22)

Before trial, Grooms filed a motion to suppress all evidence seized during the search of the Park Entrance Grocery in September 2009. (D.E. 95) He argued that the warrant was

deficient in two respects. First, Grooms contended that the warrant application failed to establish probable cause because it lacked any information regarding the reliability of the confidential informants. His second argument was that the information contained in the warrant application was stale due to the passage of time.

After an evidentiary hearing in December 2010, the magistrate judge issued a Report and Recommendation in which he recommended that the district court deny Grooms's motion to suppress. (D.E. 111) Grooms failed to object to the Report and Recommendation, and the district court adopted it after the deadline for filing objections had passed. (D.E. 140)

Jonathan, for his part, filed a motion to suppress the text messages retrieved from his cellular telephone by a law-enforcement officer following Jonathan's arrest in September 2010. (D.E. 94 in Case No. 2:10-cr-00087-4) The magistrate judge recommended that the district court deny the motion to suppress, and the district court did so over Jonathan's objections. (D.E. 135) Jonathan pleaded guilty soon thereafter. (D.E. 190) He was subsequently sentenced to 54 months of imprisonment and three years of supervised release. (D.E. 307)

Grooms, unlike his son, proceeded to trial. Shortly before the trial was scheduled to begin, the government filed a notice pursuant to Rule 404(b) of the Federal Rules of Evidence that it intended to introduce evidence at trial of other wrongful acts by Grooms. The other-wrongful-acts evidence included recorded statements by Grooms discussing various drugs that he had sold, guns that had been stolen from him, and testimony from several women that Grooms had traded drugs for sexual acts.

Grooms's trial counsel objected to the introduction of this "other acts" evidence and filed a motion in limine to exclude it. (D.E. 188) In response, the government explained that it had filed the Rule 404(b) notice out of an "abundance of caution," but argued that the evidence was

actually admissible as part of the res gestae. (May 9, 2011 Trial Tr. at 12) The district court initially declined to rule on the motion in limine, explaining that the evidence was likely "background evidence . . . , but I'm not in a position, really, at this point to make that determination definitively." (*Id.* at 16) Grooms's counsel then stated that he would renew his objections at trial. The court reiterated that "the only thing I can do is tell you to object specifically when that evidence is about to be offered . . . and I'll have to take it up at that time." (*Id.*) Grooms's trial counsel replied: "That's fine, your honor." (*Id.*)

At trial, the government offered testimony from 26 witnesses over a five-day period. Grooms did not testify in his own defense, nor did he offer any evidence or call any witnesses on his own behalf. The jury convicted Grooms on all counts except one. Grooms was subsequently sentenced to a total of 292 months in prison and eight years of supervised release. This timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

We review de novo the denial of a motion to suppress with respect to legal conclusions, while findings of facts are reviewed under the clear-error standard. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). If a defendant timely objects at trial to the evidence he challenges on appeal, we will uphold the trial court's evidentiary rulings unless the trial court abused its discretion. *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). We review evidentiary objections raised for the first time on appeal, however, under the plain-error standard. *United States v. Seymour*, 468 F.3d 378, 384 (6th Cir. 2006).

B.      **The district court did not err in denying Grooms's motion to suppress**

Grooms first contends that the district court erred when it denied his motion to suppress all evidence obtained from the September 2009 search of the Park Entrance Grocery. That search uncovered several bottles of prescription pills, drug paraphernalia, a handgun, two rifles, and a shotgun. Grooms argues that the affidavit lacked substantive averments regarding the reliability of the confidential informants and that the information contained in the affidavit was stale. Both arguments lack merit.

An affidavit may be based on hearsay from a confidential informant so long as the "issuing judicial officer is reasonably assured that the informant [is] credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). Here, the affidavit contained hearsay statements from two confidential sources, labeled "CS-1" and "CS-2." CS-1 told Task Force Officer Kimbrough in April 2009 that Grooms was selling cocaine, oxycodone, and Xanax at the Park Entrance Grocery. This confidential source also described Grooms's practice of sending confederates to Florida to obtain prescription painkillers. CS-2 told Kimbrough that he or she (the affidavit is silent as to CS-2's gender) had processed cocaine for Grooms as recently as 10 days before the affidavit was signed in September of 2009. This confidential source also named Michael Gunter as Grooms's cocaine supplier. The affidavit noted in a parenthetical that Gunter had been convicted of cocaine-related crimes in 2006 and received a 10-year prison sentence.

Grooms makes much of the fact that the affidavit failed to indicate whether CS-1 or CS-2 had provided reliable information to law enforcement in the past. He further argues that the information in the affidavit was contradictory insofar as CS-2 claimed to have processed cocaine for Grooms in the recent past despite the fact that Gunter (Grooms's alleged supplier) was

incarcerated at that time. Grooms's arguments, however, ignore the portions of the affidavit in which Special Agent Chisdock's undercover visits to the Park Entrance Grocery were discussed in detail. This corroborating evidence from Chisdock, which buttressed the information from the confidential informants, was alone sufficient to support a finding of probable cause. *See United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006) (explaining that corroborating information from a law-enforcement officer may support a finding of probable cause even if the affidavit "supplies little information concerning an informant's reliability").

Nor was the information contained in the affidavit stale. Evidence tending to establish the existence of an ongoing criminal enterprise "will generally defeat a claim of staleness." *United States v. Abboud*, 438 F.3d 554, 573 (6th Cir. 2006) (internal quotation marks omitted). Here, the information in the affidavit (particularly the observations of Special Agent Chisdock, which occurred over several months) made clear that Grooms's drug-trafficking activities at the Park Entrance Grocery were of an ongoing nature. Thus the five-month gap between Chisdock's last undercover visit to the store (in April 2009) and the issuance of the warrant (in September 2009) did not render the underlying information stale. *See id.* (holding that a three-year gap was insufficient to demonstrate staleness where the criminal activity was ongoing); *see also United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (holding that a 23-month gap was insufficient to show staleness). Accordingly, we reject Grooms's arguments that the affidavit in support of the search warrant was fatally flawed. The district court therefore did not err in denying Grooms's motion to suppress.

## C.     Grooms's argument regarding the denial of Jonathan's motion to suppress lacks merit

Grooms also challenges the denial of Jonathan's motion to suppress. In that motion, Jonathan sought to suppress the text messages that were retrieved from his cellular telephone by

a law-enforcement officer after Jonathan's arrest in September 2010. Jonathan was arrested at his girlfriend's apartment in Dandridge, Tennessee. He alleged in his suppression motion that the arresting officer required him to bring his cellular telephone to the Cocke County Jail. After Jonathan arrived at the jail, another law-enforcement officer connected Jonathan's cellular telephone to a computer and retrieved text messages from the phone. The text messages were later transferred to a disk and turned over to Jonathan's counsel during discovery.

At the suppression hearing, the magistrate judge concluded that the search of Jonathan's cellular telephone was constitutionally valid. He therefore recommended that Jonathan's motion to suppress be denied. (*See* Dec. 28, 2010 Suppression Hr'g Tr. at 14) The district court overruled Jonathan's objections and adopted the Report and Recommendation. (D.E. 135) Because Jonathan pleaded guilty shortly after his motion to suppress was denied, the contents of the text messages do not appear in the record.

Grooms asks us to address the constitutional validity of the search of Jonathan's cellular telephone notwithstanding the fact that Jonathan is not a party to this appeal. To the extent that Grooms attempts to advance a Fourth Amendment claim on Jonathan's behalf, this is impermissible. *See United States v. Williams*, 354 F.3d 497, 510–11 (6th Cir. 2003) ("It is well-established that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (internal quotation marks omitted).

Nor do we have any need to resolve the question of whether Grooms himself enjoyed a reasonable expectation of privacy in the text messages that he sent to Jonathan's phone. The Supreme Court has not yet decided this issue, although it recently heard oral argument in a case involving the warrantless search of a cellular telephone incident to arrest. *See United States v. Wurie*, 728 F.3d 1 (1st Cir. 2013), *cert. granted*, 134 S. Ct. 999 (U.S. Jan. 17, 2014)

(No. 13-212). Regardless of the outcome in *Wurie*, however, it will be of no benefit to Grooms. This is because Grooms never identifies which of his text messages to Jonathan, if any, might have been used by law-enforcement officers during their investigation of Grooms. Moreover, the record regarding the content of the text messages is completely silent, and we should avoid deciding constitutional matters in a vacuum. *See Carter v. United States*, 417 F.2d 384, 387 (9th Cir. 1969) ("All courts properly hesitate to decide important constitutional questions in a factual vacuum.").

Grooms also concedes that no text messages were introduced against him at trial. (*See* Appellant's Opening Br. at 17, 19, 23) Finally, even if we were to assume that Grooms suffered a Fourth Amendment injury, the evidence of Grooms's guilt offered at trial was overwhelming, thereby rendering any alleged constitutional violation harmless beyond a reasonable doubt. *See United States v. Carnes*, 309 F.3d 950, 963 (6th Cir. 2002) (explaining that a Fourth Amendment violation does not require reversal if the violation was harmless beyond a reasonable doubt).

**D.    Grooms's argument regarding the failure to exclude certain background evidence at trial lacks merit**

The final issue on appeal is whether the district court erred when it failed to exclude certain background evidence presented by the government against Grooms. This evidence was the subject of a pretrial notice by the government, which it filed pursuant to Rule 404(b) of the Federal Rules of Evidence. (D.E. 175) In its notice, the government explained that it planned to introduce at trial evidence of (1) Grooms's recorded statements to Special Agent Chisdock regarding marijuana, crack cocaine, and other illegal drugs, (2) Grooms's recorded statements to Chisdock regarding firearms that had been stolen from Grooms, and (3) Grooms's history of trading drugs for sexual acts. (*See id.*)

Grooms filed a motion in limine to exclude this "other acts" evidence. (D.E. 188) The district court initially declined to decide the motion, explaining that it was "not in a position, really, at this point to make that determination definitively." (May 9, 2011 Trial Tr. at 16) Just before the case went to the jury, however, the district court concluded that the evidence was res gestae evidence rather than Rule 404(b) evidence. (*See* May 12, 2011 Trial Tr. at 118) The district court then asked the parties whether the following limiting instruction was appropriate: "Remember that the defendant is on trial here only for the acts alleged in the indictment and not for any other acts." (*Id.* at 119) Both the Assistant United States Attorney and Grooms's trial counsel agreed that the limiting instruction should be given to the jury, which it was. (*See id.*)

Grooms contends that the background evidence was offered only for the purpose of inflaming the jury, and that he suffered unfair prejudice as a result of its admission. The government counters that the evidence was properly admitted as res gestae evidence. Also in dispute is the applicable standard of review. Grooms argues that the abuse-of-discretion standard applies, while the government urges us to apply the plain-error standard. This dispute, however, is ultimately academic because we conclude that any error in admitting this evidence was harmless under either standard.

This court has characterized res gestae evidence as an exception to Rule 404(b) of the Federal Rules of Evidence, the rule that generally limits the introduction of evidence of other wrongful acts by the accused. *See United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012) (characterizing res gestae evidence as "an exception to Rule 404(b)"). Res gestae evidence may include evidence that is a "prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the

witness's testimony, or completes the story of the charged offense." *Id.* at 698 (internal quotation marks omitted). The res gestae exception embodies the principle that the "jury is entitled to know the 'setting' of a case." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977).

In the case before us, we find no need to analyze the propriety of admitting the background evidence in question because the admission of evidence of extrinsic bad acts is "'harmless error' if the record evidence of guilt is overwhelming," as it was here, "eliminating any fair assurance that the conviction was substantially swayed by the error." *See United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011). The government called 26 witnesses and offered ample direct evidence that Grooms had committed the charged offenses. We thus conclude that the contested background evidence could not have substantially swayed the jury, making any error by the district court, even assuming that there was an error, harmless.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.