NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0438n.06

Case No. 16-5261

FILED
Jul 26, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ROY DEAN PRATT, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: ROGERS, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. Roy Dean Pratt appeals his conviction and sentence for being a felon in possession of a firearm. We AFFIRM.

**I. Background**

In April 2015, the Kentucky State Police ("KSP") received reports of a high volume of traffic coming and going from a home in Hindman, Kentucky. Suspicious of illegal drug activity, KSP officers set up surveillance outside the property. Over the next few days, the officers documented several suspected drug transactions.

After about a week of this, the KSP officers obtained and executed a search warrant on the home. Pratt answered when the officers arrived at the back door. His girlfriend, Sandra Dyer, was also inside. Upon searching the bedroom to the right of the back door, the officers

discovered a large gray, opened safe containing six firearms—four Henry rifles, a Rossi rifle, and a Remington shotgun—as well as ammunition. They also found a 12-gauge shotgun leaning up against the outside of that safe. The officers then spotted a small, brown or tan locked safe, which contained a Hi-Point 9-millimeter pistol. All told, the KSP seized eight fully functioning guns from that bedroom.

Nearby, Pratt spoke with some of the officers. Although his ID listed his residence elsewhere, Pratt told the police that he had lived at the home with Dyer for "anywhere between five and six years." He also explained that he and Dyer kept the loaded 12-gauge shotgun sitting beside the bed "for protection." He further described several of the other guns in the bedroom in detail, including their caliber and make. Finally, he mentioned that he and Dyer were holding the Hi-Point 9-millimeter pistol in the small brown or tan safe for a man named Jarrod Williams.

In September 2015, a federal grand jury returned an indictment charging Pratt with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The indictment cited Pratt for possessing all eight guns seized from the home. After a two-and-a-half day trial, a jury convicted him of the charge. The district court sentenced Pratt to 320-months' imprisonment.

Pratt timely appealed, challenging both his conviction and sentence. We address each of Pratt's arguments in turn.

## II. Admissibility of Drug-Trafficking Evidence

Before trial, Pratt moved to exclude any evidence relating to drug-trafficking activity at the home. But the district court denied the motion. The court noted that the government planned to present testimony that Pratt received some of the seized guns in exchange for drugs, and it

concluded that the drug-trafficking evidence was therefore background evidence or *res gestae* "necessary to complete the telling of the story" of his gun possession.

On appeal, Pratt contends that, since he was only on trial for a single felon-in-possession charge, the evidence of his drug-trafficking activity constituted impermissible character evidence under Federal Rule of Evidence 404. He also asserts that the admission of such evidence "improperly broadened" or constructively amended the indictment. We disagree.

We review the trial court's decision to admit evidence as *res gestae* for abuse of discretion. *United States v. Jackson*, 543 F. App'x 525, 530 (6th Cir. 2013) (citing *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012)). In general, Federal Rule of Evidence 404(b) prohibits presenting circumstantial evidence of a criminal defendant's prior bad acts unless admitted for a particular purpose, such as proving that the defendant had the motive or opportunity to commit a crime. But evidence of prior bad acts may fall outside Rule 404(b)'s ambit if it forms part of the background of the charged conduct. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citing 2 Jack B. Weinstein, et al., Weinstein's Federal Evidence, § 404.20[2][c]). Such background evidence is admissible at trial "when the evidence includes conduct that is inextricably intertwined with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (internal quotation marks omitted) (quoting *Clay*, 667 F.3d at 697). *Res gestae* "may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *Id.* (quoting *United States v. Grooms*, 566 F. App'x 485, 491 (6th Cir. 2014)). And it can encompass unindicted criminal activity. *Id.* (quoting *United States v. Potts*, No. 97-6000, 1999 WL 96756, at *9 (6th Cir. Feb. 2, 1999)).

We see no abuse of discretion in the district court's admission of the drug-trafficking evidence. As noted, the KSP officers observed Pratt conducting what they surmised was a drug-trade operation out of his home. Not only did this drug-trafficking prompt them to seek and execute a search warrant on the property—and thus discover the guns—it also explained how Pratt came to acquire several of the guns in the first place. Indeed, at trial, testimony and evidence permitted an inference that Jarrod Williams, whose 9-millimeter Hi-Point pistol police found in the small brown or tan safe, traded or pawned his gun to Pratt in exchange for Suboxone, a drug used to treat opiate addiction. Another witness, Rebecca Patrick, testified that she traded the four Henry rifles recovered from the large gray safe for drugs. Although she said she handed the rifles to Dyer, she remembered Pratt being present for one of the exchanges. And as she recalled, he picked up one of the rifles, showing Dyer's son how to handle it. The drug-trafficking evidence also helped explain why Pratt possessed the guns. A reasonable jury could infer that Pratt used the guns to protect his illicit drug trade, especially given his statement to the police that he and Dyer kept the 12-gauge shotgun "for protection." *See United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005) (concluding that witness testimony about the defendant's crack and marijuana operation constituted background evidence to a felon-in-possession charge because the firearm was necessary for his protection).[1] Evidence related to Pratt's drug-trafficking thus "ar[ose] from the same events" as the felon-in-possession charge, "form[ed] an integral part of" the witness testimony in this case, and "complet[ed] the story" of

---

[1] Previously, we have held that drug-trafficking activity can be "highly probative, direct evidence of" a defendant's motive to possess a firearm. *Frederick*, 406 F.3d at 761. Rule 404(b)(2) permits admitting "[e]vidence of a crime, wrong, or other act" for the purpose of proving motive. Because the district court's classification of the drug-trafficking evidence as *res gestae* was proper, however, we need not address whether the evidence would have also been admissible under Rule 404(b)(2).

how and why Pratt came into possession of several of the guns. *Churn*, 800 F.3d at 779 (quoting *Grooms*, 566 F. App'x at 491).

Pratt's related contention that the drug-trafficking evidence constructively amended the indictment lacks merit. "An indictment is broadened 'when the government, the court, or both, broadens the possible bases for conviction beyond those presented by the grand jury.'" *United States v. Watford*, 468 F.3d 891, 908 (6th Cir. 2006) (quoting *United States v. Duran*, 407 F.3d 828, 842 (7th Cir. 2005)). "[T]his court's test for finding a constructive amendment requires a variance between indictment and jury instructions." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (citation and internal quotation marks omitted).

No such variance occurred here. The court repeatedly reminded the jurors before and during trial that the government charged Pratt for only one crime—being a felon in possession of a firearm—and that their job was limited to deciding whether Pratt had committed that crime. What's more, the court twice emphasized during its final instructions: "[Pratt] is only on trial for the particular crime charged in the indictment. Your job is limited to deciding whether the government has proved the crime charged." "We ordinarily presume the jury followed its instructions, and [Pratt] has offered nothing to rebut this presumption" beyond conclusory contentions. *United States v. Lawrence*, 735 F.3d 385, 403 (6th Cir. 2013).

## III. Sufficiency of the Evidence

At trial, Pratt moved twice for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the evidence failed to prove he actually or constructively possessed any of the firearms recovered from the home. The district court rejected Pratt's arguments both times, finding that the evidence of possession was sufficient to submit to the jury. On appeal, Pratt raises the same lack-of-sufficient-evidence challenge. We find his arguments unpersuasive.

We review de novo the district court's denial of Pratt's Rule 29 motion. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (citing *United States v. Talley*, 194 F.3d 758, 764 (6th Cir. 1999)). In evaluating Pratt's argument, we construe the evidence in the light most favorable to the government, and then determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We avoid weighing the evidence, considering the credibility of witnesses, or substituting our judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994)). And if we conclude that a rational jury could have found the essential elements of the crime charged, "our mandate is to affirm" its guilty verdict. *United States v. Arnold*, 486 F.3d 177, 182 (6th Cir. 2007) (en banc).

To prove a violation of 18 U.S.C. § 922(g)(1), the government must establish beyond a reasonable doubt that "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citing *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). Only the sufficiency of the evidence with respect to the second element—knowing possession of a gun—is at issue here. The government may prove this element by showing either actual or constructive possession. *Id.*

Viewing the evidence in the light most favorable to the government, we conclude that a rational jury could find that Pratt both actually and constructively possessed firearms.

*Actual Possession.* "A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (quoting *Frederick*, 406 F.3d at 765). As discussed, Rebecca Patrick testified that, on

one occasion when she gave a Henry rifle to Dyer and Pratt, Pratt picked up the rifle, demonstrating to Dyer's son how to handle it. That's direct physical control. Patrick's "eyewitness testimony describing a firearm actually possessed by the defendant"—a Henry rifle—that "matches a firearm later recovered by the police" thus amounts to enough evidence for the jury to infer that Pratt actually possessed one of the guns police seized from the home. *Arnold*, 486 F.3d at 183.

Pratt concedes that this evidence shows he handled a Henry rifle, but he argues that his "very brief physical touching [of the gun] at one time" does not amount to actual possession. He also suggests that Patrick's recollection of this incident is unreliable because she forgot the date of the transaction. Viewing Patrick's testimony in the light most favorable to the government, however, Pratt did more than touch the gun—he held it and showed Dyer's son how to operate it. Pratt cites no case law to support his theory that holding a gun for a "very brief" time means he did not actually possess it. Nor are we aware of any minimum temporal prerequisite for showing direct physical control of a gun. What matters is whether Pratt "was seen actually possessing a gun matching the description" of one of the firearms police seized from the home, *Arnold*, 486 F.3d at 183—and he was. Moreover, Patrick's testimony linking Pratt to one of the seized Henry rifles is not so attenuated in time or place as to undercut its reliability and inferential value. *See id.* at 183–84 (citing cases).

*Constructive Possession.* Even disregarding Patrick's testimony, ample evidence supports a jury finding that Pratt constructively possessed all of the firearms charged in the indictment. "[C]onstructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Campbell*, 549 F.3d at 374 (quoting *United*

- 7 -

*States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). Further, "[p]roof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *Bailey*, 553 F.3d at 944–45 (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)). Although "[p]resence *alone* near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove construction possession," *Arnold*, 486 F.3d at 183 (internal quotation marks and citation omitted), "[o]ther incriminating evidence," such as "proof of motive," a "gesture implying control," or a "statement indicating involvement in an enterprise," can "tip the scale in favor of constructive possession," *Campbell*, 549 F.3d at 374 (internal quotation marks and citations omitted).

A rational jury could find that Pratt exercised dominion over the home's bedroom and constructive possession of the guns within it. *See United States v. Cook*, 290 F. App'x 874, 879 (6th Cir. 2008). During their search of the home, KSP officers found all of the guns in the bedroom, seven of which were easily accessible—six in an unlocked safe, and one out in the open. Pratt was not only present in the house, he answered the door. He spoke with several of the officers, informing them that he had lived in the home for five or six years. Pratt also made several incriminating statements. He described the Henry rifles in detail, including the different calibers, and clarified that he and Dyer kept the 12-gauge shotgun "for protection." He further explained that he and Dyer were holding the Hi-Point 9-millimeter pistol in the small brown or tan safe for Jarrod Williams. In fact, evidence suggested that Williams had likely traded or pawned that gun to Pratt for Suboxone. And testimony showed that Pratt obtained several of the other guns found in the home bedroom in exchange for drugs.

Pratt attempts to undermine this evidence, first by distancing himself from the place of the guns' seizure. He claims that, although he had access to the home, he did not actually live

there—he says he lived instead in a trailer on the same property. He thus argues that he did not have "dominion and control over" the home and therefore could not have possessed the firearms stored there. But the evidence presented at trial belies his argument. At the time of the search, Pratt told the KSP officers that he had lived in the home for five to six years. And, corroborating this statement, police saw Pratt's clothing—including a leather vest inscribed with "Pratt Boy"—in the same bedroom where they found the guns. Inside the large gray safe where six of the guns were stored, the KSP officers also uncovered several prescriptions issued to Pratt that listed the home as his address. Additionally, one officer answered a phone call during the search, and the caller asked to speak to Pratt, saying he needed some Suboxone. In light of this evidence, a rational jury could conclude beyond a reasonable doubt that Pratt lived in the home. *See Cook*, 290 F. App'x at 879.

Pratt nevertheless aims to explain away this evidence by pointing to the testimony of his girlfriend, Dyer, who claimed that she was the sole owner and keeper of the guns, that Pratt did not live with her, and that Pratt used the home's mailing address for prescriptions because he could not receive mail at his trailer. But the jury obviously discredited this portion of Dyer's testimony, and we may not interfere with that determination. *See Chavis*, 296 F.3d at 455 (citing *Ferguson*, 23 F.3d at 140). Pratt also decries the lack of evidence showing that the firearms were registered to him or that his fingerprints were on any of the guns. Although such evidence would certainly have bolstered the government's case, its absence isn't fatal. Circumstantial evidence suffices to sustain Pratt's conviction. *Campbell*, 549 F.3d at 374.

In sum, applying both the actual and constructive possession theories, sufficient evidence supports Pratt's conviction under § 922(g)(1).

**IV. Jury Unanimity**

Pratt next contests the district court's jury instructions. Specifically, he points out that the indictment charged him with possession of eight different firearms in a single count, and he contends that "[h]e was entitled to an instruction that[,] in order to convict[,] the jury must unanimously decide which firearm(s) he possessed." But Pratt admittedly failed to raise this unanimity objection to the district court. We therefore review for plain error. *United States v. Sims*, 975 F.2d 1225, 1240 (6th Cir. 1992). And we discern no such error below.

A federal jury must return a unanimous verdict in order to convict a criminal defendant. Fed. R. Crim. P. 31(a). In doing so, it "must unanimously decide that all facts that constitute 'elements' of a crime occurred, but it does not necessarily need to be unanimous when considering the 'brute facts' or 'means' that make out an element." *United States v. Hendrickson*, 822 F.3d 812, 822–23 (6th Cir. 2016) (quoting *United States v. Eaton*, 784 F.3d 298, 308 (6th Cir. 2015)). In the context of a felon-in-possession charge, this court has held that "the particular firearm possessed is not an element of the crime under § 922(g), but instead the means used to satisfy the element of 'any firearm.'" *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004). Thus, "[t]he fact-specific rule is that no unanimity instruction is required where multiple firearms charged in a single count were discovered as part of the same transaction." *Id.* at 540 (citing *Sims*, 975 F.2d at 1240–41). But there is also an exception to that rule: "when the particular factual circumstances create 'a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts,' a jury unanimity instruction is still required." *Id.* at 542 (quoting *Sims*, 975 F.2d at 1241).

Despite Pratt's arguments to the contrary, no exceptional circumstances exist here. KSP officers found all eight firearms charged in the indictment in the same bedroom. Pratt contends there is a risk of juror confusion because each gun had a different "story" behind how he came to be in possession of it. But "[t]he fact remains" that the eight guns "were all located in the same" bedroom of the home, and "the evidence sufficiently established" that Pratt lived there and "had dominion over" that space. *Cook*, 290 F. App'x at 884. "Because the . . . [multiple] firearms charged in the single count were all discovered as part of the same transaction, the district court committed no error by not giving a specific unanimity instruction." *Id.* (concluding that possession of firearm, ammunition, and gun shells charged in single count did not require a unanimity instruction when they were all located in the same single-room apartment where the defendant resided); *see also United States v. Strickland*, No. 92-1119, 1993 WL 264714, at *3 (6th Cir. July 14, 1993) (concluding that there was little risk of juror confusion when the three guns charged in the indictment were in the "same general vicinity" of the defendant).

## V. Sentencing

At sentencing, the district court found that three prior controlled substance offenses subjected Pratt to enhanced penalties under the Armed Career Criminal Act (ACCA). It also concluded that, because Pratt possessed a firearm in connection with a controlled substance offense—i.e., trafficking in Suboxone and other drugs—he had a criminal history category of VI and an offense level of 34 under U.S. Sentencing Guidelines § 4B1.4. That placed Pratt within a Guidelines range of 262- to 327-months' imprisonment. The court sentenced him to 320 months, citing in particular the need to protect the public given Pratt's extensive history of serious and violent crimes (including, but not limited to, those that provided the basis for the ACCA

enhancement).  On appeal, Pratt contests his classification as an armed career criminal and the calculation of his Guidelines range.

*Armed Career Criminal Classification.*  Generally, federal law caps punishment for violating § 922(g) at 10-years' imprisonment.  18 U.S.C. § 924(a)(2).  "But if the violator has three or more earlier convictions for a 'serious drug offense' or a 'violent felony,' the [ACCA] increases his prison term to a minimum of 15 years and a maximum of life."  *Johnson v. United States*, 135 S. Ct. 2551, 2555 (2015) (quoting 18 U.S.C. § 924(e)(1)).

The presentence report (PSR) found that Pratt qualified as an armed career criminal because he had "at least three prior convictions" for violent felonies or serious drug offenses, and the district court agreed.  Since Pratt lodged no objection to this finding at sentencing, we review his claim on appeal for plain error.  *See United States v. Prater*, 766 F.3d 501, 507 (6th Cir. 2014) (citing *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)).

Pratt fails to identify any error, let alone plain error, in the district court's decision to classify him as an armed career criminal.  A serious drug offense under the ACCA includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Pratt acknowledges that he has three convictions in Kentucky for first-degree trafficking in a controlled substance.  *See* Ky. Rev. Stat. § 218A.1412 (2001).  He also acknowledges that, at the time of his conviction, these offenses subjected him to a ten-year or more maximum term of imprisonment.  *See id.* § 532.060(2)(b), (c) (2001).  Nevertheless, he argues that, because the current version of Kentucky's drug-trafficking statute has lowered the maximum penalty for certain types of drug-trafficking offenses, *see id.* §§ 218A.1412(3)(b)(1), 532.060(2)(d) (2015),

his previous convictions may have qualified for a lower-than-ten-year maximum sentence under the revised statute.

We make quick work of this contention. In *McNeill v. United States*, 563 U.S. 816, 820 (2011), the Supreme Court held that the only way to determine whether a previous conviction qualifies as a serious drug offense under the ACCA "is to consult the law that applied at the time of that conviction." Because Pratt's previous first-degree drug-trafficking offenses each garnered a ten-year maximum term of imprisonment at the time of conviction, *see* Ky. Rev. Stat. §§ 218A.1412, 532.060(2)(c) (2001), they clearly count as serious drug offenses under the ACCA.

Attempting to resuscitate his argument, Pratt contends in his reply brief that *McNeill* did not address situations in which a state reduces the maximum penalty for a conviction and then makes that reduction retroactively available to convicted defendants. *See* 563 U.S. at 825 n.1. Though conceding that Kentucky has made no such retroactive reduction that would apply to his drug-trafficking convictions, he suggests the district court should have explored the issue anyway. We disagree. The district court had no obligation to consider this futile line of inquiry, especially since Pratt never asked it to do so.

Pratt also makes the additional claim—for the first time in his reply brief—that his ACCA classification could be an equal protection violation. We consider that argument forfeited. *Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 301 (6th Cir. 2006) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005)).

Accordingly, Pratt's classification as an armed career criminal under the ACCA was proper.

*Calculation of Offense Level and Criminal History Category.* A defendant who is an armed career criminal under the ACCA, such as Pratt, also qualifies as an armed career criminal under the Sentencing Guidelines. U.S.S.G. § 4B1.4(a). Section 4B1.4 assigns different offense levels and criminal history categories to career offenders that vary depending on certain factors. Relevant here, § 4B1.4 provides that "if the defendant used or possessed the firearm or ammunition in connection with . . . a controlled substance offense" his offense level is 34 and his criminal history category is VI. *Id.* § 4B1.4(b)(3)(A), (c)(2). Concluding that significant evidence showed that Pratt used firearms in connection with his drug-trafficking activities, the district court applied these enhancements to Pratt's Guidelines calculation. We review Pratt's claim of error with respect to his criminal history category for abuse of discretion. *See United States v. Shor*, 549 F.3d 1075, 1077 (6th Cir. 2008). Because Pratt failed to preserve his objection to his offense level, we review that claim for plain error. *See Prater*, 766 F.3d at 507.

Pratt objects to his criminal history and offense level classifications under § 4B1.4, arguing principally that "there is no evidence whatsoever that [he] actually used a firearm in connection with a drug offense or for any purpose." But this supposition strains credulity. As detailed in Part II, *supra*, guns played a pivotal role in Pratt's sale and distribution of Suboxone and other drugs: Pratt received the firearms in exchange for drugs and used them for protection.

Pratt nonetheless suggests error because the government never indicted him for the controlled substance offense at issue—that is, selling Suboxone and possibly other drugs. This argument, however, ignores precedent. Uncharged conduct can warrant a Sentencing Guidelines enhancement, so long as the district court finds by a preponderance of the evidence that such conduct occurred. *See United States v. Freeman*, 640 F.3d 180, 188 (6th Cir. 2011). It did so here. We therefore see neither abuse of discretion nor plain error in the district court's

determination that Pratt used a firearm in connection with a controlled substance offense, resulting in an offense level of 34 and a criminal history category of VI. *See* U.S.S.G. § 4B1.4(b)(3), (c)(2).

## VI. Conclusion

For the foregoing reasons, we AFFIRM Pratt's conviction and sentence.