NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0111n.06

No. 13-2640

FILED
Feb 06, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RAPHAEL HARRIS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     GIBBONS and COOK, Circuit Judges; GWIN, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge.  Raphael Harris appeals his conviction for

being a felon in possession of a firearm.  He argues that the evidence was insufficient to sustain a

conviction and that the district court erred in refusing to give a proposed supplemental jury

instruction on constructive possession.  We hold that there was sufficient evidence from which a

reasonable jury could have found him guilty and that the district court did not err in declining the

supplemental instruction.  We therefore affirm Harris's conviction.

I.

While on patrol at 4:00 a.m. one day in February 2013, Detroit police officers David Ball

and Michael Bender noticed an older Cadillac with expired tags.  They stopped the car and spoke

to Raphael Harris, the car's only occupant.  A search of the officers' database revealed that

---

[*] The Honorable James S. Gwin, United States District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Harris owned the Cadillac and that his registration and driver's license had expired. He also lacked insurance. Ball wrote three citations and both officers returned to Harris's car.

While Bender gave Harris the tickets, Ball looked into the windshield using a flashlight. He "observed a gun underneath the seat, partially underneath the front driver seat of the vehicle." The gun was "roughly at the end of [Harris's] heels," such that Harris would have touched the gun if he had moved his feet. Ball motioned to his colleague, indicating there was a firearm in the car. During the earlier database search, the officers had also established that Harris did not have a concealed pistol license. Bender ordered Harris out of the car. Because the driver-side door was not working, Harris climbed over to the passenger side to exit. Rather than lifting the armrest between the two seats, Harris climbed over it to reach the passenger side. Bender then placed him under arrest for carrying a concealed weapon in a motor vehicle without a license.

Ball recovered the weapon—a loaded .38-caliber revolver—and then conducted an inventory search of the car. He lifted the armrest between the two front seats and saw another loaded .38-caliber revolver on the seat, underneath the armrest. No fingerprints were found on either firearm, and neither was sent for DNA testing. According to an expert, it would be difficult to detect fingerprints because of the texture of the surfaces on both guns.

Monica Evans, an agent with the Detroit Police Department's Federal Task Force, then inspected the Cadillac. She reported that the car's messy interior contained a prescription pill bottle from 2010 labeled for a Quintin Lee, a 2010 bill from a mechanic, an advertisement for automotive repair services, and various other documents. According to Harris's wife, she and Harris rarely drove the Cadillac; it had been in and out of repair shops and had otherwise spent the last three years in their yard in "not the best" neighborhood in Detroit. Evans noted that Harris's yard contained a depression in the ground roughly the size of the Cadillac.

A grand jury returned a one-count indictment against Harris for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A jury trial took place in the Eastern District of Michigan in August 2013. Harris was convicted and the district court—after denying motions for judgment of acquittal and for a new trial—sentenced him to seventy-two months' imprisonment.

## II.

A conviction for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) requires proof of three elements: (1) the defendant had a prior felony conviction; (2) he knowingly possessed a firearm; and (3) the firearm traveled in or affected interstate commerce. *United States v. Nelson*, 725 F.3d 615, 619 (6th Cir. 2013). Harris stipulated that he had a prior felony conviction and does not challenge the interstate-commerce element. The issues on appeal focus only on the possession requirement. First, Harris contends that there was insufficient evidence of possession to sustain a conviction. Second, he contends that the district court committed prejudicial error by refusing to give Harris's requested jury instruction on constructive possession.

## A.

This court reviews *de novo* the district court's denial of a motion for judgment of acquittal. *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014). A motion for judgment of acquittal tests the legal sufficiency of the evidence. Fed. R. Crim. P. 29; *United States v. King*, 169 F.3d 1035, 1038 (6th Cir. 1999).

The court reverses a conviction based on sufficiency only if no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). Thus, the evidence "'need not remove every reasonable

hypothesis except that of guilt.'" *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (emphasis omitted) (quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)). Circumstantial evidence alone can be sufficient to sustain a conviction, *id.*, and the court will draw all reasonable inferences in the light most favorable to the government, *United States v. Middleton*, 246 F.3d 825, 848 (6th Cir. 2001). All told, the defendant "bears a 'very heavy burden.'" *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014) (quoting *United States v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005)).

The possession element may be satisfied through either actual or constructive possession. *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013). "Actual possession exists when an individual knowingly has direct physical control over a thing at a given time." *United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009). A person has constructive possession if he "'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Walker*, 734 F.3d at 455 (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)).

The parties debate whether this case should be treated as one of actual possession or constructive possession. But the line between the two "is not analytically crisp," *id.* at 456–57, and there is no dispute over the sufficiency of the evidence that Harris had at least dominion and control over the guns, even if he did not have direct physical control. There is just one point of contention: whether there was sufficient evidence that Harris *knew* that at least one of the guns was there. We hold that there was sufficient evidence of Harris's knowledge. Thus, "[i]n any event, the evidence at trial did indeed establish possession, whether actual or constructive." *See id.* at 457.

In *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009), the evidence was insufficient because the only probative evidence of possession was the presence of the weapon in the stolen car that the defendant was driving.[1] The mere fact that a defendant is driving a car that contains a gun—even if the defendant is the sole occupant—is not sufficient by itself to establish knowledge. *Id.* at 946. But other incriminating evidence, along with the defendant's presence in the car, may "tip the scale in favor of sufficiency." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (quoting *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976)); *see also Bailey*, 553 F.3d at 948 (requiring "additional circumstantial evidence").

The additional evidence in this case is sufficient to establish possession. *See Bailey*, 553 F.3d at 948–49. Harris was not only the sole occupant of the Cadillac but was also the owner. When sitting in the driver's seat, one of the guns was directly next to him and the other was sticking out from under the seat, up to his heels, and plainly visible. This evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that Harris knew about at least one of the guns and therefore had possession.

The position of the guns relative to the defendant weighs in favor of Harris having knowledge of at least one of them. Mere proximity to a firearm is not sufficient alone. *See Arnold*, 486 F.3d at 183 (citing *Birmley*, 529 F.2d at 107–08); *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006). But the position and visibility of the weapons can be relevant factors. In *United States v. Morrison*, 594 F.3d 543 (6th Cir. 2010), the police found the gun in the center console of the car the defendant was driving. The gun was "less than inches" from the defendant, such that it was "probably rubbing his side." *Id.* at 545. It was also in the defendant's plain view. *Id.* These facts were significant in this court's reasoning because they went to the

_____

[1] The government in *Bailey* also produced evidence that the defendant tried to evade police. 553 F.3d at 945. But this "proved little" as regards the knowledge of the firearm because the car also contained crack cocaine and the defendant may have been trying to evade arrest for that crime. *Id.* at 946.

defendant's knowledge of the presence of the gun. *See id.* ("Taken together, these facts support an inference that Morrison knew the gun was there.").

The evidence in the present case contains similar indicia of knowledge. Even if the revolver under the armrest—which was very close to Harris—was not detectable, the other gun was partially sticking out from under the seat. It was visible to the officer from outside the car, and was close enough to Harris's heels that he would likely have touched it if he moved his feet. A jury could reasonably conclude that a defendant knew the gun was there because it would have been difficult to avoid seeing it—when entering the vehicle even if not while driving—or touching it with his feet.

Harris places great weight on the officers' failure to see the gun when they first approached the car, along with the fact that Ball only saw it when looking through the windshield with a flashlight. But a jury could certainly find these facts consistent with Harris's knowledge of the firearm. Harris could have been aware of the presence of the gun at his feet even though the officers could not, or simply did not, see it when adjacent to the car.

Also indicative of knowledge is the manner in which Harris exited the vehicle. Given that the driver's-side door was not functioning, Harris needed to use the passenger-side door. Rather than simply lifting the armrest—which would have been the most natural way to exit—he climbed over it. Lifting the armrest would have revealed the presence of one of the revolvers. The peculiar manner of exit is one of several factors from which—taken together—a reasonable jury could properly infer knowledge.

Harris's ownership of the Cadillac is another material factor, even if also not dispositive by itself. Harris correctly explains that no Sixth Circuit case has definitively held that ownership alone is sufficient to establish knowledge of an item inside the vehicle. But we have indicated

that ownership may be part of the factual matrix that is sufficient to establish knowledge. *See Bailey*, 553 F.3d at 949 (collecting cases, including *United States v. Wright*, 392 F.3d 1269, 1273–74 (11th Cir. 2004), and *United States v. Jackson*, 301 F.3d 59, 64 (2d Cir. 2002), in which ownership was one of several factors going to knowledge).

In this case, a reasonable jury could have considered Harris's ownership as a factor going to his knowledge of at least one of the guns, especially given the paucity of evidence indicating that others had access to the vehicle. His wife testified that they did not generally drive the Cadillac and that it spent a lot of time in the yard in "not the nicest neighborhood." Evans reported that the car was messy and contained a prescription bottle that originally belonged to someone other than Harris. But there is no evidence that others actually accessed the vehicle while it was in the yard, nor that the car was left unlocked, windowless, or otherwise accessible to the general public. The car had apparently been to a mechanic in 2010, and perhaps on some other occasions. Harris claims on appeal that he had just retrieved the car from a "neighborhood mechanic" at the time he was pulled over. There was no evidence of this at trial, however. Harris's claims do not detract from the jury's ability to consider his ownership of the Cadillac as one indicator—albeit not the only indicator—of his knowledge that the guns were present.

"[T]he facts matter in these cases." *Morrison*, 549 F.3d at 546. This case does not simply involve a defendant who happened to be close to a gun when apprehended, but a set of additional facts that clearly allow a rational inference that the defendant knew at least one of the guns was there. A rational jury could find the possession element satisfied beyond a reasonable doubt. We therefore affirm.

B.

Harris next argues that his conviction should be reversed even if the evidence was sufficient because the district court refused to give a jury instruction that he requested on the topic of constructive possession. "'A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs the . . . defense.'" *Nelson*, 725 F.3d at 623 (quoting *United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011)). We therefore reverse "'only if the instructions, viewed as a whole, were confusing, misleading and prejudicial.'" *United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)). We will not reverse simply because the requested instruction is better written than the charge actually given. *See United States v. McCarty*, 440 F.2d 681, 683 (6th Cir. 1971) (per curiam).

> Here, the district court instructed the jury on constructive possession as follows:

> [T]he government must prove that the defendant had the right to exercise physical control over a firearm, and knew that he had this right, and that he intended to exercise physical control over it at some time, . . . either directly or through other persons . . . . [U]nderstand that just being present where something is located does not equal possession. The Government must prove that the defendant had actual or constructive possession of a firearm, and knew that he did, for you to find him guilty of the crime . . . . The term "knowingly" means voluntarily and intentionally, and not because of mistake or accident.

The court declined to supplement its instruction on constructive possession with Harris's requested additional instruction that mere ownership or possession of a vehicle was insufficient to prove constructive possession.[2]

---

[2] In full, Harris's requested instruction was as follows:

> To establish constructive possession, the government must prove that the defendant knew that the firearms were present in the vehicle and intended to exercise dominion over them or intended to exercise control over them, either

Harris's claim fails because the instruction was substantially covered by the actual jury charge. The court's instructions substantially covered the requested material because they made clear that constructive possession requires both possession and knowledge. The court not only emphasized the meaning of "knowledge" at this point, but also returned to further clarify the knowledge requirement later in the instructions. It repeated the need for the act to have been done voluntarily and intentionally, and added that "knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish." The court also told the jury that it should "consider all the evidence, both direct and circumstantial."

Although these instructions do not specifically mention ownership of a vehicle as a consideration, they substantially cover the requested instruction. This court addressed an analogous issue in *United States v. Monus*, 128 F.3d 376, 390 (6th Cir. 1997). In order to obtain a conviction for obstruction of justice, the government in that case was required to prove that the defendant knew "that a grand jury proceeding was pending." *See id.* The district court denied the defendant's request for an instruction that "it is not enough for the government to prove that the defendant knew an investigation was being conducted by the FBI or IRS." *Id.* This court affirmed, holding that the district court's jury charge substantially covered the requested instruction. *Id.*

So too here, the instructions gave the jury all they needed to decide this case. In particular, they allowed the jury to decide whether to accept or reject Harris's theory: the notion that ownership of the Cadillac was not alone sufficient. The court's instructions made clear that

---

directly or through other persons. Simple ownership or operation of the vehicle by the defendant is insufficient to prove that the defendant knew he had possession of the firearms. This is a factor you may consider; however, the government must prove that there is other evidence indicating the defendant's knowledge of the firearms.

the jury should only find possession if the circumstances demonstrated Harris voluntarily or intentionally had control over—or the right to control—at least one of the guns. This left open the possibility, of course, that an owner of a car may not have possession over an item found in the car. There is no basis, therefore, for Harris's assertion that "the jury likely discounted half of [his] defense" as a result of the instruction. The instructions substantially covered the information Harris was attempting to convey. The district court did not err in its instructions.

III.

For the above reasons, we affirm Harris's conviction.