RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee*,

  *v.*

SIRSHUN DONTRELL BURRIS,

  *Defendant-Appellant*.

No. 20-1607

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cr-00272-2—Robert J. Jonker, District Judge.

Argued:  April 27, 2021

Decided and Filed:  May 25, 2021

Before:  MOORE, COLE, and GILMAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant.  B. Rene Shekmer, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant.  B. Rene Shekmer, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge.  Sirshun Dontrell Burris appeals his convictions for conspiracy to possess and distribute methamphetamine, for the distribution of

methamphetamine on a specific date, and for possession with the intent to distribute methamphetamine on a subsequent date.  He was sentenced to 180 months of imprisonment, which includes a firearms conviction that he does not appeal.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

This case concerns a series of six drug transactions that took place in September and October 2019 in Benton Harbor, Michigan.  Detective Joseph Kovac, acting in an undercover capacity, initiated the controlled purchases of methamphetamine by dialing the same telephone number each time.  The first two transactions involved Det. Kovac meeting with Burris's codefendant Douglas Davis.  Det. Kovac testified that the third transaction involved a different individual.  As that individual drove away after the transaction, Det. Kovac recorded the license plate number on the individual's pickup truck and determined that it was registered to Burris at 1142 Agard Avenue, Benton Harbor, Michigan.  Det. Kovac then used the driver's license photo to confirm that Burris was the individual that he had met.

During the following three transactions, officers saw Davis go to and from the 1142 Agard Avenue address to meet Det. Kovac.  When Det. Kovac met Davis for the fifth time on October 22, 2019, Det. Kovac told Davis that he wanted more methamphetamine than the previously agreed-upon quantity.  Davis did not have the additional methamphetamine with him, so he asked Det. Kovac to drop him off at a nearby intersection and to circle the block.  Officers then observed Davis exit Det. Kovac's car, walk to 1142 Agard Avenue, and then enter the residence.  A short time later, Davis returned to Det. Kovac's car with the additional methamphetamine.

The final controlled purchase occurred on October 23, 2019.  Immediately after this transaction, Davis was arrested in the front yard of Burris's residence.  Several officers then proceeded to execute a search warrant.  When two of the officers moved into the backyard, they observed Burris exiting from the backdoor and fleeing.  One officer observed Burris's left arm clutched to his chest, "similar to how you would see a football player carrying a football."  Burris crossed a small alley, hopped over a wire fence, and crossed Union Street.  Two different

officers spotted Burris as he crossed.  Burris was apprehended shortly thereafter.  He was carrying a small amount of cash, a cell phone, and a loaded semi-automatic firearm.

When the officers searched the path that Burris had followed, they found a black leather bag containing methamphetamine at the exact location where Burris had hopped over the fence. In Burris's residence, officers found two additional firearms and a digital scale.

The charges against Burris included the following four Counts: Count One – conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine; Count Four – distribution of methamphetamine on October 8, 2019; Count Eight – possession with intent to distribute 50 grams or more of methamphetamine on October 23, 2019; and Count Nine – being a felon in possession of a firearm on October 23, 2019.

The trial began in early March 2020.  At the conclusion of the government's case-in-chief, the district court asked defense counsel if he "want[ed] to do a Rule 29 at this point." Defense counsel declined the court's invitation to challenge the sufficiency of the government's evidence.  After three days of trial, the jury found Burris guilty on all of the above four Counts. The district court subsequently sentenced Burris to a total of 180 months of imprisonment.

Burris appeals his convictions on Counts One, Four, and Eight on the basis of insufficient evidence.  He does not appeal his conviction on Count Nine for being a felon in possession of a firearm.

## II.  ANALYSIS

### A.  Standard of review

This court generally reviews a district court's refusal to grant a motion for a judgment of acquittal de novo.  *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020).  The court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not

remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) (internal quotation marks and citation omitted).

When a defendant does not move for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, however, this court has applied a more stringent standard of review. In those circumstances, "appellate review is limited to determining whether there was a 'manifest miscarriage of justice.'" *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008) (quoting *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998)). "Such a miscarriage of justice occurs only if the record is devoid of evidence pointing to guilt." *Id.*

Burris contends that the miscarriage-of-justice/devoid-of-evidence standard is inconsistent with *Jackson v. Virginia*, 443 U.S. at 316. In *Jackson*, the Supreme Court observed that "an essential of the due process guaranteed by the Fourteenth Amendment" is "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." *Id.* (citing *In re Winship*, 397 U.S. 358 (1970)). The Court rejected the "no evidence" rule of *Thompson v. City of Louisville*, 362 U.S. 199 (1960), under which a conviction would be reversed only when there was no evidence to support it. *Id.* at 320. That standard, the Court observed, "is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt." *Id.* The Court therefore held that habeas petitioners are entitled to relief if they can show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. This court has applied the "*Jackson* standard" to preserved insufficient-evidence challenges. *United States v. Kennedy*, 714 F.3d 951, 956–57 (6th Cir. 2013).

We continue, however, to analyze *unpreserved* sufficiency-of-the-evidence challenges under the miscarriage-of-justice/devoid-of-evidence standard of review. Although we did not adopt this standard until 1998, *see Price*, 134 F.3d at 350 (importing the "devoid of evidence" standard from *United States v. Cannon*, 981 F.2d 785, 790 (5th Cir. 1993)), its roots predate *Jackson* by several decades, *see United States v. Delgado*, 672 F.3d 320, 355–56 (5th Cir. 2012) (en banc) (Dennis, J., dissenting) (tracing the Fifth Circuit's "devoid of evidence" standard to *Molina v. United States*, 162 F.2d 198 (5th Cir. 1947)). Because the "devoid of evidence" standard was formulated before *Jackson*, it is "merely [an] expression[ ] of what the Supreme Court, at that time, had held was required by due process to support a conviction: 'any' evidence

to sustain the verdict." *Id.* at 356 (Dennis, J., dissenting) (citing *Jackson*, 443 U.S. at 312–13). *Jackson*, of course, rejected the "no evidence" rule as constitutionally inadequate and recalibrated what evidence due process requires. The miscarriage-of-justice/devoid-of-evidence standard of review mirrors the "no evidence" rule and is likely inadequate for the same reasons.

Criminal defendants can, of course, forfeit or waive even their "most basic rights." *Peretz v. United States*, 501 U.S. 923, 936 (1991). But even under plain-error review, the Supreme Court has specifically noted that appellate courts are not limited to correcting miscarriages of justice, defined as actual innocence. *United States v. Olano*, 507 U.S. 725, 736 (1993) ("[W]e have never held that a Rule 52(b) remedy is *only* warranted in cases of actual innocence.") (emphasis in original). "Rather, . . . [t]he Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)); *see also id.* at 736–37 ("An error may seriously affect the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence.") (internal quotation marks omitted).

A conviction based on insufficient evidence, which endangers an "essential" element of the Constitution's due process guarantee, *Jackson*, 443 U.S. at 316, clearly affects substantial rights and the fairness, reputation, and integrity of the court system. For this reason, several of our sister circuits have observed that the plain-error review applied to unpreserved sufficiency-of-the-evidence challenges is materially the same as de novo review under *Jackson*. *See United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007) (en banc) (explaining that because "a conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudice[s] the defendant, and almost always creates manifest injustice," review under the plain-error standard is "essentially the same as if there had been a timely motion for acquittal") (citation and internal quotation marks omitted); *see also United States v. Gadson*, 763 F.3d 1189, 1217 (9th Cir. 2014) (observing that plain-error review of an unpreserved sufficiency-of-the-evidence claim "is only theoretically more stringent than the standard for a preserved claim") (internal citation and quotation marks omitted); *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001)

(applying the *Jackson* standard of review to an unpreserved sufficiency-of-the-evidence challenge).

Most circuits, however, agree that a more stringent standard of review applies to unpreserved challenges.  *See* Harry T. Edwards & Linda A. Elliott, FEDERAL STANDARDS OF REVIEW § III.D (2018) (collecting cases).  But only three circuits join the Sixth Circuit in consistently applying the miscarriage-of-justice/devoid-of-evidence standard.  *See United States v. Williams*, 784 F.3d 798, 802 (D.C. Cir. 2015); *Delgado*, 672 F.3d at 330–31; *United States v. Turner*, 551 F.3d 657, 662 (7th Cir. 2008).  Because this standard predates *Jackson* and runs afoul of *Olano*'s instructions involving plain-error review, we are concerned that our court may have chosen the wrong side of this circuit split.

But two obstacles prevent us from reconsidering this difficult question today.  First, we recognize that this court has consistently applied the miscarriage-of-justice/devoid-of-evidence standard of review to unpreserved sufficiency-of-the-evidence challenges for nearly 25 years.  A published decision of this court "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985)).

Second (and most importantly), for the reasons set forth below, we conclude that Burris's claim would fail regardless of the standard of review we apply.  Sufficient evidence exists to support Burris's conviction on each of the Counts that he challenges even under the *Jackson* standard.  We therefore believe that a reconsideration of the proper standard of review to apply to unpreserved sufficiency-of-the-evidence challenges is best left to a future case where the issue might impact the outcome.

**B.  The merits of Burris's challenge**

We now turn to the merits of Burris's challenge to the sufficiency of the evidence supporting his convictions on Counts One, Four, and Eight.  These counts charge Burris with various controlled-substance offenses relating to the possession and distribution of methamphetamine.

### 1. *Count One*

Count One charges Burris with a conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine from September 2019 to October 23, 2019.  To sustain a conviction for conspiracy to distribute controlled substances, the government must prove the following three elements: "(1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).

Burris cites our decision in *United States v. Gibbs*, 182 F.3d 408 (6th Cir.1999), to argue that one or more of these elements is lacking.  In *Gibbs*, a loosely associated group of drug dealers was charged with a conspiracy to control the distribution of cocaine in a local area by excluding nonlocal drug dealers.  *Id.*  at 418–19.  This court vacated several of the defendants' convictions.  Although the court found that there was sufficient evidence that these defendants sold drugs in the area during the relevant time period, there was no evidence that they had agreed to participate in the charged conspiracy to "exclude outsiders."  *Id.* at 423; *see also id* ("[E]vidence that the defendants knew each other, grew up together, sold crack in the same area, or on occasion sold crack together fails to prove membership in the conspiracy [to exclude outsiders from selling drugs].").

Burris argues that "mere association" is insufficient to establish participation in a conspiracy.  *See Gibbs*, 182 F.3d at 422.  Here, however, there is much more than simple association between Burris and Davis.  When Det. Kovac called the phone number to arrange drug sales, Davis delivered the drugs five times and Burris brought the drugs one time.  Although Burris sold methamphetamine to Det. Kovac on only one of those occasions, officers observed Davis come and go from Burris's residence before and after each of the following three drug transactions (including the October 22 transaction, when officers observed Davis exit Det. Kovac's car, enter Burris's residence, and return to Det. Kovac's car after Det. Kovac requested more drugs than the previously agreed-upon quantity).  And when the officers executed a search warrant of Burris's residence, Burris fled.  The officers found firearms and a digital scale in the house, as well as a bag of methamphetamine in Burris's flight path.  This evidence, in sum, was sufficient to establish Burris's involvement in the narcotics conspiracy.  *See United States v.*

*Martinez*, 430 F.3d 317, 334 (6th Cir. 2005) ("Henderson's connection to the conspiracy, a general conspiracy to distribute and possess with intent to distribute drugs, can be inferred from evidence that he was involved in repeat drug transactions with members of the conspiracy.").

But Burris contends that "there was not sufficient evidence of an agreement because there was no proof of communication between Davis and Burris." We find this argument unpersuasive because the government need not provide direct evidence of an agreement between coconspirators. "[A] conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan." *United States v. Volkman*, 797 F.3d 377, 390 (6th Cir. 2015) (citation and internal quotation marks omitted); *see also United States v. Pelfrey*, 822 F.2d 628, 632 (6th Cir. 1987) ("Inferential proof may be controlling where the offense charged is so inherently secretive in nature as to permit the marshalling of only circumstantial evidence. This is the norm in drug conspiracy prosecutions."). For these reasons, there was sufficient circumstantial evidence for the jury to find the existence of an illicit agreement between Burris and Davis.

### 2. Count Four

Count Four charged Burris with the distribution of methamphetamine on October 8, 2019. Det. Kovac testified that, on October 8, Burris delivered 13.8 grams of methamphetamine to Det. Kovac in exchange for $200. As Burris drove away in his pickup truck, Det. Kovac recorded the license plate number and determined that the pickup truck was registered to Burris at 1142 Agard Avenue.

Burris contends that "Kovac's testimony was not credible" because the transaction took place at dusk, that Kovac's testimony was not corroborated, and that the testimony involved a cross-racial identification. These arguments are unpersuasive. When considering a challenge to the sufficiency of the evidence, "[w]e may not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Osborne*, 886 F.3d 604, 608 (6th Cir. 2018) (citations and internal quotation marks omitted). Because the record contains direct evidence of Burris's guilt, his argument fails.

### *3. Count Eight*

This leaves Count Eight, which charged Burris with possession with the intent to distribute methamphetamine on October 23, 2019. At trial, two officers testified to witnessing Burris flee from his residence when they executed the search warrant. One officer testified that Burris appeared to be clutching something as he ran. After Burris was apprehended, the officers searched the area and found a black leather bag containing methamphetamine at the exact spot where Burris had hopped over the wire fence.

Burris contends that this evidence was insufficient because the officers did not see him carry the bag, that there was no body-camera evidence, and that neither his fingerprints nor his DNA were found on the leather bag.

But these arguments fall short because, even under the *Jackson* standard, there was sufficient evidence for the jury to reasonably conclude that Burris had possessed the methamphetamine and discarded it in the course of fleeing his residence to evade the police. *See United States v. Dye*, 538 F. App'x 654, 664–65 (6th Cir. 2013) ("Evidence of flight that has probative value is admissible as evidence of guilt, and the jury may decide how much weight to give it.") (citing *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989)); *see also Lowe*, 795 F.3d at 522–23 ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.") (citation and internal quotation marks omitted).

### III.  CONCLUSION

For all of the reasons set forth above,  we **AFFIRM** the judgment of the district court.