NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0487n.06

Case No. 20-2203

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Oct 27, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MELVIN JAMES HARRIS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

Before: McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges

**McKEAGUE, Circuit Judge.** Melvin Harris sold drugs to an informant in a controlled buy. He then resisted arrest. While awaiting trial, via recorded jail line, he enlisted his sister and others in an effort to get the informant not to testify—violating the court's protective order regarding the informant's identity in the process. When all was said and done, he was convicted on five counts via superseding indictment and sentenced to twenty years in prison. He argues that the district court erred in admitting certain evidence, in denying his motions for a judgment of acquittal, in denying his proposed jury instructions, and in sentencing him as a career criminal. His arguments are unavailing. For the reasons set forth below, we AFFIRM.

I.

In 2019, Kady Shananaquet offered to help police with drug investigations. A member of the Grand Traverse Band of Ottawa and Chippewa Indians, she was concerned about drugs on her reservation. She had struggled with drugs herself, but at that time she had been sober for several months. The police did not offer to pay her for her help, and although she later inquired about compensation, she was not paid. She also wasn't under investigation for any criminal wrongdoing. She provided police with Melvin Harris's name as someone from whom she had previously bought cocaine.

On August 14, 2019, Shananaquet participated in a controlled buy from Harris. She set the meeting via Facebook Messenger and he told her to meet him at a bus stop. She showed up wearing a recording device and transmitter, which police monitored. She gave Harris $100; he gave her paper containing white powder that the parties stipulated was cocaine. At trial, Shananaquet identified her own and Harris's voices on the recording and identified Harris as the man who sold the cocaine to her.

Four days later, Sergeant Russ Cavanaugh of the Grand Traverse Band Tribal Police was on patrol at the Tribe's casino. He was in uniform and looking for Harris on outstanding warrants. He saw Harris sitting at the bar and approached him, grabbed his shoulder, and told him that he was under arrest. Harris responded, pulled away from Cavanaugh, and tried to run away. Cavanaugh tried to grab Harris, held on for a moment and then fell to the ground. Harris lost his balance and hit a wall; Cavanaugh grabbed his leg. With the help of a security guard, Harris was wrestled to the ground. Video of the incident was played for the jury at trial.

The following month, the district court entered a Protective Order prohibiting Harris from disclosing information "tending to reveal the identity, contact information, and other personal information about witnesses." R. 25, P. 48-49.

Despite this order, Harris set out to enlist others, including Vanessa Hunter and Corey Raphael, to help dissuade Shananaquet from testifying. Harris spoke numerous times with his sister, Hunter, on a recorded line, telling her that he had been indicted following a controlled buy, and revealing the full name and identity of the woman who was the informant. Harris then told Hunter to contact others, including Raphael, to tell them who Shananaquet was and what she had done, and to also try to get her to either not come to court or change her story.

Hunter reached out to a number of friends and acquaintances, including Raphael. Raphael had known Harris for a few years and had gotten cocaine from Harris the week of the controlled buy. Raphael told Hunter via Facebook Messenger after a phone call that Shananaquet had "got me heated. It's all good now. I got something for her ass. Watch on God." R. 211, P. 1674. He told others about Shananaquet. He claimed at trial that the purpose of this was not to keep Shananaquet from testifying, but merely to inform other dealers about her.

Raphael then received a grand jury subpoena. He texted back and forth with Hunter about it before testifying. He went in, "told some lies," and reported back to Hunter that he had "lied about everything pretty much." R. 211, P. 1660-61. He testified that "I told [Hunter] I did what they wanted me to say." R. 211, P. 1683.

Meanwhile, Harris also reached out to another acquaintance, George Hall. Hall was also in jail, and Harris knew he was Shananaquet's cousin. Hall in turn spoke with his sister, Charla Hall, who sent Shananaquet a Facebook message telling her that Harris "asked if you could not go to his court date." R. 211, P. 1619. Shananaquet notified police.

In January 2020, the Grand Jury returned a six-count superseding indictment against Harris, Hunter, and Raphael. Harris was charged with selling cocaine, resisting or assaulting a federal officer, contempt of court, conspiracy to witness tamper, and witness tampering. Hunter was also charged with witness tampering. Raphael pled guilty to conspiracy to witness tamper, hoping to receive a reduced sentence for his cooperation.

Harris and Hunter went on trial in July 2020. Raphael testified against Harris. He recanted his testimony, however, halfway through Harris's trial. In a call from jail shortly after trial, Harris said that he had told Raphael that the government had tricked him. This behavior resulted in an obstruction of justice enhancement at sentencing.

The jury returned a guilty verdict against both Hunter and Harris. The court sentenced Harris in December 2020. The court concluded Harris was a career offender, resulting in a guideline range of 262-327 months. The court varied downward, imposing a 240-month sentence for the distribution, witness tampering, and contempt of court counts and a 96-month sentence for resisting arrest to run concurrently.

Harris then brought this appeal.

II.

Harris makes four arguments on appeal. First, he argues that the district court improperly admitted evidence at trial. Second, he argues that the court improperly denied his Rule 29 motions for judgment of acquittal. Third, he argues that the court abused its discretion in denying his requested jury instructions. Fourth, he argues that the court improperly counted prior drug distribution offenses as career offender predicates under the Sentencing Guidelines. We address these arguments in turn.

A. Admission of Evidence of Prior Drug Sales

First, Harris argues that the district court abused its discretion by admitting evidence of alleged prior drug transactions that Harris had with Raphael and Charla Hall. "We review a district court's decision to admit testimony and other evidence under an abuse of discretion standard." *United States v. Sumlin*, 956 F.3d 879, 888 (6th Cir. 2020). We must be "firmly convinced that a mistake has been made" to find an abuse of discretion. *Id.* (quoting *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006)).

Under Rule 404(b), evidence of a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This Court recognizes an exception to Rule 404(b) for res gestae evidence. Res gestae evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). This type of "background evidence" must have a "causal, temporal or spatial connection with the charged offense." *Id.* "Typically, such evidence . . . is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* These "intrinsic acts" are different than "extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quoting *United States v. Stafford*, 198 F.3d 248, at *4 (6th Cir. 1999)).

Harris suggests that the testimony of Raphael and Charla Hall constituted extrinsic evidence because it was "not necessary or integral to the government's theory on the witness tampering charges." Appellant's Br. 30 (internal quotations omitted). We disagree.

Regarding Raphael, the United States elicited evidence of his relationship with Harris on direct examination. Raphael testified that he had obtained cocaine from Harris during the week that the controlled buy took place, and that he periodically gave Harris rides in exchange for cash or cocaine. This information contextualized how he knew Harris, it clarified Raphael's motives for testifying, and it also revealed any potential bias he harbored related to Harris. *See Sumlin*, 956 F.3d at 882, 890–91 (affirming admission of testimony about drug transactions from the decedent's sister as res gestae in a distribution-resulting-in-death case).

The same is true for Charla Hall. In Charla Hall's case, the government asked her about prior drug transactions only after the defense elicited testimony from her that she had no reason to take action on Harris's behalf. This, too, contextualized Charla Hall's testimony and was integral to understanding her motivations and their relationship. *See Churn*, 800 F.3d at 779 (holding that testimony that "explains the relationship between the witness and the defendant" is properly admissible as res gestae).

Res gestae evidence is still subject to Rule 403. *Id.* Here, the district court relied on detailed limiting instructions to eliminate any risk that unfair prejudice would "substantially outweigh" the probative value. *See* Fed. R. Evid. 403. It did not abuse its discretion in deciding that the probative value of this evidence substantially outweighed any unfair prejudice.

Harris also argues that the evidence was unfairly prejudicial because it was cumulative. We note that this argument conflicts with his contention that there was insufficient evidence of intent to convict him on his witness tampering charges, discussed next. Regardless, he is unable to point to other information that would establish why Raphael and Charla Hall joined in his conspiracy, so the evidence cannot be cumulative.

B.  Denial of Rule 29(a) Motions

Harris argues that the district court erred as a matter of law by denying his Rule 29(a) motions because "there was insufficient evidence to convict him of any charge."  Appellant's Br. 26.  We disagree.

A denial of a Rule 29(a) motion is reviewed de novo.  *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020).  Evidence is sufficient if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We address Harris's challenge to each count in turn.

### 1.  Count I: Distribution

Count I charged Harris with distributing a controlled substance.  Harris argues that the evidence against him is legally insufficient because the sole basis supporting this charge is the testimony of Shananaquet, whom he argues is not reliable.

"When considering a challenge to the sufficiency of the evidence, '[w]e may not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury.'"  *United States v. Burris*, 999 F.3d 973, 980 (6th Cir. 2021) (quoting *United States v. Osborne*, 886 F.3d 604, 608 (6th Cir. 2018)).  Because the record contains sufficient evidence that Harris distributed cocaine, his claim fails.

### 2.  Count II: Assault

Count II charged Harris with assaulting, resisting or impeding a federal officer.  This statute includes "four distinct elements; the government must show that the defendant: (1) forcibly (2) assaulted, resisted, opposed, impeded, intimidated, or interfered with (3) a federal officer (4) in

the performance of his duties." *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001). Harris

argues that the evidence offered at trial was insufficient to prove Harris acted forcibly.

The force element "may be satisfied by proof of actual physical contact." *United States v.*

*Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016) (quoting *United States v. Street*, 66 F.3d 969, 977 (8th

Cir. 1995)). Here, the jury was shown video evidence and heard testimony of a protracted physical

struggle between Cavanaugh and Harris, during which Harris knocked Cavanaugh to the ground.

This is sufficient evidence for a reasonable trier of fact to conclude that the element was satisfied.

### 3. Count III: Contempt of Court

Count III charged Harris with violating the court's protective order regarding

Shananaquet's identity. The contempt count required finding that he "acted with intent or

willfulness" in violating the protective order. *United States v. Hendrickson*, 822 F.3d 812, 820

(6th Cir. 2016).

Harris argues there was insufficient evidence to establish this state of mind. This is simply

not the case. The record reflects testimony that Harris violated the order multiple times, revealing

Shananaquet's identity to George Hall and his sister with the explicit purpose of preventing her

from showing up to court. There was ample reason for a reasonable factfinder to conclude that his

conduct was willful.

### 4. Count IV: Conspiracy to Witness Tamper

Harris challenges his conviction on Count IV, conspiracy to witness tamper, arguing that

there was no evidence that he "had knowingly joined an agreement to tamper with witnesses."

Appellant's Br. 38–40. "[T]he government need not provide direct evidence of an agreement

between coconspirators." *Burris*, 999 F.3d at 979. The jail calls provided enough evidence that

Harris was involved in a conspiracy with Hunter to tamper with the witnesses. The same was true with his communications with George and Charla Hall. This claim also fails.

### 5. Count 5: Witness Tampering

Finally, Harris argues that there was insufficient evidence to support his conviction for witness tampering. Witness tampering requires that the government prove that a defendant "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so . . . with intent to influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b)(1). The government presented ample evidence that he tried to intimidate Shananaquet or otherwise persuade her to not testify. For instance, George Hall testified that Harris specifically asked him to ask Shananaquet not to testify. Hall later asked his sister to contact Shananaquet with this request, which she did via a Facebook message presented to the jury. Harris argues that he never directly contacted the witness, but his directions to others are more than sufficient for a reasonable factfinder to conclude that the element was satisfied. *Cf. United States v. Thompson*, 758 F. App'x 398, 410–12 (6th Cir. 2018).

### C. Denial of Proposed Jury Instructions

Harris argues that the district judge erred by failing to give any of his three requested jury instructions. A court's refusal to give a proposed jury instruction is reviewed for abuse of discretion. *United States v. LaVictor*, 848 F.3d 428, 453–54 (6th Cir. 2017).

First, Harris argues that the district court should have delivered a quid pro quo instruction, Pattern Instruction 7.06A. Because, as Harris conceded, the informant did not receive compensation for her testimony, the court acted within its discretion to deny Harris's request. *See United States v. Edgecombe*, 107 F. App'x 532, 536–37 (6th Cir. 2004) (per curiam) (holding that

the district court properly denied a quid pro quo instruction where a plan to provide consideration to the informant fell apart before trial).

It is the same story for Harris's request for Pattern Instruction 7.06B. Pattern Instruction 7.06B applies when an informant was using drugs when the events she is testifying about occurred, and the government has promised her some benefit for her testimony. 6th Cir. PJI § 7.06B(1). There was no evidence that Shananaquet was either using drugs at the time of the controlled buy or receiving any benefit from the state. This argument also fails. *Cf. United States v. Smith*, 624 F. App'x 385, 391 (6th Cir. 2015) (affirming the denial of a drug use jury instruction where an informant testified that she was only occasionally smoking crack cocaine while serving as a witness).

Harris also argues that the district court should have given an alternate instruction that was a hybrid of 7.06A or 7.06B. He does not provide an explanation for what this would be, nor does he provide justification for why deviation from the pattern jury instructions is necessary here. *Cf. United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021) ("[T]his court has noted the potential problems that can arise when trial courts stray from the Pattern Jury Instructions.") (citing *United States v. Rios*, 830 F.3d 403, 434 (6th Cir. 2016) and *United States v. Clinton*, 338 F.3d 483, 490–91 (6th Cir. 2003)). The district court did not abuse its discretion in refusing to give a non-pattern jury instruction here.

### D. Career Offender Status

Finally, Harris argues that he should not have been sentenced as a career offender. He argues that his two prior convictions under Mich. Comp. Laws § 333.7401 for the delivery or manufacture of a controlled substance do not count as controlled substance offenses under the Sentencing Guidelines. We have previously held that convictions under Mich. Comp. Laws

§ 333.7401 are controlled-substance offenses under the Sentencing Guidelines, and so this argument fails.  *See United States v. Booker*, 994 F.3d 591, 595 (6th Cir. 2021) (citing *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam)).

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.