NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0500n.06

No. 22-5172

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 06, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| DAVID DWIGHT MARTIN, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, STRANCH, and THAPAR, Circuit Judges.

BOGGS, Circuit Judge. Did David Martin knowingly possess the gun that police officers found lying in plain view on the floorboard of the car where he had been sitting? After a bench trial, the district court found that he did and convicted him of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Martin moved for a judgment of acquittal, the district court denied his motion, and this appeal followed. Because a rational trier of fact could conclude beyond a reasonable doubt that Martin actually possessed the gun, we affirm.

**BACKGROUND**

**A. Facts**

Just after midnight on December 4, 2019, a police patrol of the Metropolitan Nashville Police department stopped a blue BMW 3 Series that was driving with expired tags. Three people were in the car that night: Ashley Allison, the driver; Roger Johnson, the front-seat passenger; and David Martin, who was sitting behind the driver in the back.

Earlier that night, Allison had picked up Johnson, with whom she had a romantic relationship, in her car. Allison kept guns in her home, and her siblings also owned guns. None of Allison's siblings' guns were black. While Johnson testified that Allison's siblings had travelled in Allison's car with their guns prior to that night, Allison testified that nobody other than she used her car. Allison testified that there were no guns in her car when she picked up Johnson, and Johnson testified that he did not have a gun on him when he got into the car and that he did not see any guns in the car.

After getting into the car, Johnson asked Allison whether she was willing to give Martin a ride in exchange for gas money, and Allison agreed. Allison and Johnson picked Martin up at the home of Martin's close friend, Jazmin Johnson, with whom Martin had been spending time. Jazmin Johnson testified that she did not see a gun on Martin that day.

After stopping the car, Detective Hunter Fikes and Officer William Erickson got out of their patrol car and approached Allison's car from behind, Fikes on the driver side and Erickson on the passenger side. Standing behind the rear door, Fikes spoke to Martin, who had his window rolled down. Fikes, who was carrying a flashlight, observed a plastic baggie protruding from Martin's left pocket. When asked, Martin confirmed that the baggie contained marijuana. Fikes took the baggie from Martin and asked him to step out of the car. When Martin stepped out of the car, Fikes saw a black Springfield XDS .45-caliber handgun lying on the floorboard where Martin's feet had been. The interior of the car was beige.

 Fikes testified that the gun was fully visible and in plain view. He initially testified that there was nothing other than the gun on the floorboard, but later clarified that "there might have been some trash or something like that" in the backseat, maintaining that the gun was nevertheless

"in plain view." When questioned on cross-examination, Fikes could not recall what was on the floorboard other than the gun and could not remember the color of the car's interior.

Erickson, meanwhile, had walked up to the front of the car on the passenger side, from where he initiated a conversation with Allison and Johnson. After Martin got out of the car, Fikes informed Erickson that there was a gun in the car. Erickson testified that he saw the gun on the floorboard through the back passenger window. On cross-examination, Erickson testified that there were other items on the floorboard, but that the gun was on top of them. Erickson did not recall the color of the interior, either.

Neither Fikes nor Erickson saw the gun when Martin was in the car, nor did they ever see Martin physically touching the gun.

### B. Procedural History

Martin was indicted in federal court on two counts of being a felon in possession of a firearm. The second count was based on the December 4, 2019, arrest. Martin consented to a bench trial, which the district court held in May 2021. At the conclusion of the parties' proof, the court returned a verdict of not guilty on the first count and a verdict of guilty on the second count. Martin moved for judgment of acquittal in June 2021, and, on March 1, 2022, the district court denied Martin's motion. Martin timely appealed.

## DISCUSSION

### A. Standard of Review

We review motions for acquittal de novo. *United States v. Burris*, 999 F.3d 973, 976 (6th Cir. 2021). But we reverse only if we determine that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ibid*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This is a

"demanding standard," *United States v. Brooks*, 987 F.3d 593, 601 (6th Cir. 2021), which imposes a "very heavy burden" on defendants, *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014) (quoting *United States v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005)). In conducting our review, we may not reweigh the evidence or reassess the credibility of witnesses. *Ibid*. "Circumstantial evidence alone is sufficient to sustain a conviction," *ibid*. (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)), and such evidence "need not remove every reasonable hypothesis except that of guilt," *id*. at 721 (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

### B. Legal Framework

The felon-in-possession crime has four elements. To obtain a conviction under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that (1) the defendant was a felon; (2) the defendant knew he was a felon; (3) the defendant knowingly possessed a firearm; and (4) the firearm traveled in or affected interstate commerce. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020); *see also Brooks*, 987 F.3d at 601 (treating the first and second elements as one single "status element"). Martin stipulated to all elements except the third, possession. Accordingly, he can prevail on appeal only by showing that, after drawing all reasonable inferences in favor of the prosecution, no rational trier of fact could have found beyond a reasonable doubt that he knowingly possessed the gun that the police found in Allison's car.

Our cases distinguish between "actual" and "constructive" possession, but both types of possession satisfy the possession element of 18 U.S.C. § 922(g)(1). *Brooks*, 987 F.3d at 601. The knowing possession of a gun "at a given time" violates the statute—there is no "minimum temporal prerequisite." *Ibid*. (first quoting *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009), and then quoting *United States v. Pratt*, 704 F. App'x 420, 425 (6th Cir. 2017)).

A person actually possesses a gun if it is within his "immediate power or control." *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013); *see also Brooks*, 987 F.3d at 601 (glossing actual possession as "actual and physical control" (quoting *Possess*, *Black's Law Dictionary* (5th ed. 1979)). This includes holding or holstering a gun, but also keeping a gun in a place where it is immediately accessible. *United States v. Taylor*, 800 F.3d 701, 709 (6th Cir. 2015); *see also United States v. Morrison*, 594 F.3d 543, 545 (6th Cir. 2010) ("Whether a defendant 'had immediate access to the weapon' is significant to the question whether he had immediate control of it." (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007))).

By contrast, a person constructively possesses a gun when he "does *not* have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Grubbs*, 506 F.3d at 439 (emphasis added) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). For instance, you might constructively possess a gun that you keep in your bedroom or in a compartment in the basement stairs of your home, even if you are not present when police search your home. *Craven*, 478 F.2d at 1333–34. Constructive possession is thus a legal fiction—a finding of possession in law without proof of possession in fact—based on an inference of past or potential possession. *See generally* Benjamin C. Murray, *Hands Off The Gun! A Critique of* United States v. Jameson *and Constructive Possession Law in the Tenth Circuit*, 85 Denv. U. L. Rev. 531, 536–37 (2008); *United States v. Jenkins*, 90 F.3d 814, 822 (3d Cir. 1996) (Cowen, J., dissenting).

It can be difficult to distinguish between actual and constructive possession. *Walker*, 734 F.3d at 456 ("[T]he line of demarcation between 'actual' and 'constructive' possession is not analytically crisp."); *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914) (citing *Union Trust Co. v. Wilson*, 198 U.S. 530, 537 (1905)) ("[A]ctual possession and constructive possession . . . often so shade into

one another that it is difficult to say where one ends and the other begins."). Consider a gun lying on the floorboard of a car where a passenger is sitting. We might say that the passenger actually possesses the gun, either because it is so close to him and so positioned as to be immediately accessible, *Taylor*, 800 F.3d at 709, or because its presence, along with other circumstantial evidence, shows that he was recently carrying it, *Brooks*, 987 F.3d at 602. Or we might say that the passenger constructively possesses the gun, because, while the gun is not immediately accessible, he can easily reach for it. *Walker*, 734 F.3d at 456–57.

These nuances show why "the facts matter in these cases." *Morrison*, 594 F.3d at 546. They also explain why we occasionally analyze cases under both theories, *e.g.*, *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc), or refuse to choose one theory over the other, *e.g.*, *Walker*, 734 F.3d at 457; *United States v. Harris*, 600 F. App'x 985, 987–88 (6th Cir. 2015). Since both actual and constructive possession satisfy the possession element of 18 U.S.C. § 922(g)(1), most cases that fall into the interpretive gray zone—where a defendant has access to a gun that is not in his *immediate* power or control—will turn on the defendant's knowledge of the gun, not on the immediacy of the defendant's control. *See Harris*, 600 F. App'x at 987–88. Conceptual difficulties in deciding to which rubric to assign any given case should not blind courts to the evil that "Congress meant to proscribe . . . when it enacted the felon-in-possession law." *Morrison*, 594 F.3d at 545. Congress's concern in proscribing possession was with "keeping firearms out of the hands of . . . convicted felons." *Barrett v. United States*, 423 U.S. 212, 220 (1976). Neither the text nor the purpose of § 922(g) require us to distinguish a felon who physically holds a gun from a felon who merely keeps a gun nearby.

### C. Possession

The district court concluded beyond a reasonable doubt that Martin actually possessed the gun found in Allison's car. Viewing the facts in the light most favorable to the prosecution, we cannot say that no rational finder of fact could agree. The district court could reach its conclusion in one of two ways.

First, the district court could rationally infer that Martin had recently carried the gun. *See Brooks*, 987 F.3d at 602. Allison and Johnson testified that there were no guns in the car before they picked up Martin, who was their only passenger that night. This testimony provides circumstantial evidence that supports the inference that it was Martin who brought the gun into Allison's car. Reasonably crediting this testimony, a rational fact finder could conclude beyond a reasonable doubt that Martin actually possessed the gun "at a given time," that is, when he brought it into the car. *See Bailey*, 553 F.3d at 944.

Nor can we say that only an irrational trier of fact would discount the meagre evidence to the contrary: the gun found in Allison's car differed from the guns owned by Allison's family members, and Jazmin Johnson's testimony—that she did not see the gun on Martin on the day of his arrest— hardly proves that Martin did not put the gun in Allison's car. *See generally* Carl Sagan, *The Dragons of Eden: Speculations on the Evolution of Human Intelligence* 7 (1977) ("[A]bsence of evidence is not evidence of absence.").

Second, the district court could find that Martin actually possessed the gun that was lying on the floorboard because it was immediately accessible to him. *See Taylor*, 800 F.3d at 709. Neither of the testifying officers saw Martin physically touching the gun, and Fikes equivocated about the presence and position of other items on the back floorboard. However, both testifying officers confirmed that the gun was fully visible on the floorboard where Martin's feet had been. Based on this

testimony, a rational trier of fact could both infer that Martin knew about the gun and conclude beyond a reasonable doubt that the gun was "immediately accessible" to Martin, *see Taylor*, 800 F.3d at 709, and within Martin's "immediate power or control," *Walker*, 734 F.3d at 455 (quoting *United States v. Murphy*, 107 F.3d 1199, 1207–08 (6th Cir. 1997)).

The district court below and the United States relied primarily on *Morrison*. In *Morrison*, the arresting police officer noticed a pistol grip sticking out between the driver's seat and the center console. 594 F.3d at 544. The officer testified that the gun was "less than inches" away from the driver and "probably was rubbing his side or if he was wearing a seat belt he might have bumped into it within inches of the seat." *Ibid*. We affirmed the driver's conviction on an actual-possession theory, holding that the evidence, viewed in the light most favorable to the prosecution, "support[ed] an inference that [the driver] knew the gun was there and that it was within his immediate control." *Id*. at 545. We also noted that "the arrangement . . . was functionally equivalent to [the driver] carrying [the gun] in a holster." *Ibid*.

Martin attacks the district court's reliance on *Morrison*, urging us to find that actual possession is limited to situations where a gun is "effectively holstered." Such a narrow reading of *Morrison* is not wholly without support in our cases. In *Walker*, we found that a front-seat passenger constructively possessed a gun seen lying "on the floor of the car between the passenger's seat and the door, near the floor mounting for the front passenger's seat belt." 734 F.3d at 454. In explaining our decision to analyze this case under a constructive-possession theory, we surveyed and distinguished cases finding actual possession even in the absence of direct evidence of possession. *Id*. at 456–57. In this discussion, we suggested that, in such cases, "the government either proved the gun was in a position that was the 'functional equivalent' of keeping a gun in a pocket or holster . . . or introduced

circumstantial evidence showing that the defendant had recently been carrying the weapon." *Id.* at 457 (quoting *Morrison*, 594 F.3d at 545).

As an initial matter, even a narrow reading of *Morrison* does not change the outcome here. As discussed above, the district court reasonably treated this as a case where "circumstantial evidence show[ed] that the defendant had recently been carrying the weapon." *Ibid.*

Nevertheless, actual possession is not limited to situations that closely resemble the facts of *Morrison*. *Morrison* did not announce an effective-holstering requirement for actual-possession cases where the prosecution lacks direct evidence of possession. Rather, our decision in *Morrison* rested on "two critical facts" that spoke to the defendant's knowledge and immediate control: first, the visibility of the gun to the defendant and, second, the proximity and position of the gun. *Morrison*, 594 F.3d at 545. Instead of announcing a new, restrictive effective-holstering rule, *Morrison* merely applied our general rule for actual possession, which considers whether a defendant has "immediate possession or control" of the firearm. *Ibid.* (quoting *Grubbs*, 506 F.3d at 439).

Indeed, our post-*Walker* cases have found actual possession in situations that closely parallel the facts of our case even though they are quite different from those in *Morrison*. In *Taylor*, we said that a shotgun found on the floorboard next to where the defendant had been sitting was in the defendant's actual possession. 800 F.3d at 705, 709. In *Harris*, we analogized to *Morrison* and found that a defendant possessed a gun that was partially underneath the defendant's car seat, close enough to the defendant's heels that he would have touched it if he had moved his feet. 600 F. App'x at 988. And in *Brooks*, we found that a car passenger actually possessed a gun the handle of which was seen protruding out between the seat and the floorboard. 987 F.3d at 602 (citing *Morrison*, 594 F.3d at 545). These cases confirm that *Morrison*'s description of the placement of the gun as "functionally equivalent to . . . carrying it in a holster," *Morrison*, 594 F.3d at 545, was merely meant to strengthen

a conclusion based on an application of the general rule—that actual possession means "immediate power or control" or "actual and physical control." *Walker*, 734 F.3d at 455; *Brooks*, 987 F.3d at 601.

Martin's other challenges to the district court's finding of actual possession fail. First, Martin argues that he did not actually possess the gun "because it was not directly on his person or his hands." But direct evidence of physical touching is neither necessary nor, for that matter, always sufficient to support a finding of possession. *See, e.g.*, *Taylor*, 800 F.3d at 709 (finding actual possession without physical touching); *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (concluding that merely touching a firearm was insufficient to establish constructive possession).

Second, Martin argues that he did not know about the gun at his feet because there were other items on the floorboard and because it was dark. This argument fails to satisfy the demanding standard that we apply in reviewing motions for acquittal. *See Burris*, 999 F.3d at 976. The district court heard and weighed evidence about the visibility of the gun, and we may not reweigh it. *Garcia*, 758 F.3d at 718. On cross-examination, Fikes conceded the presence of other items on the back floorboard but maintained that the gun was in plain view. Erickson confirmed his colleague's testimony. Viewing the record in the light most favorable to the prosecution, a trier of fact could rationally conclude that the gun was visible and infer that Martin had the requisite knowledge to sustain a conviction for actual possession.

## CONCLUSION

For the reasons above, the district court's order denying Martin's motion for judgment of acquittal is **AFFIRMED**.